997 P.2d 544

**STATE of Arizona, Appellant,**

v.

**John C. WOODRUFF, Appellee.**

**No. 1 CA–CR 98–0865.**

Court of Appeals of Arizona,
Division 1, Department E.

March 14, 2000.

Joel Ruechel, Navajo County Attorney, David A. Brown, Deputy County Attorney, Holbrook, Attorneys for Appellant.

Keith A. Hammond, P.C. by Keith A. Hammond, Flagstaff, Attorney for Appellee.

## OPINION

WEISBERG, Presiding Judge.

¶ 1 The State appeals from the trial court's order placing John Woodruff ("defendant") on intensive probation. The State claims that the sentence was illegal under Arizona Revised Statutes Annotated ("A.R.S.") section 13–914 (Supp.1998) and Arizona Supreme Court Administrative Order No. 89–15 ("Order 89–15") relating to administrative requirements for intensive probation. For the following reasons, we affirm.

## FACTS

¶ 2 In May 1997, defendant pled guilty to two counts of sale of marijuana, and was placed on supervised probation. In August 1998, defendant was indicted on two counts of use of dangerous drugs. Pursuant to a plea agreement, he subsequently pled guilty to one count of use of a dangerous drug. Under the terms of the agreement, that conviction would also serve as the basis to revoke defendant's probation in the earlier case.[1] However, the agreement expressly provided that probation remained available in both cases and that there was no agreement as to sentence.

---

1. Despite the use of the term "revoke," the agreement permitted the court to reinstate defendant's probation in the earlier case. When questioned by the trial court on this point, the prosecutor indicated that it was the intention of the parties that the later conviction would be deemed an automatic violation of defendant's probation in the earlier case, *see* Rule 27.7(e), Arizona Rules of Criminal Procedure (violation hearing not required when probationer found guilty of criminal offense), but that the court remained free to reinstate defendant on probation.

¶ 3 The probation department prepared a presentence report. Under the heading "Intensive Probation Assessment," the report noted that defendant fell within the appropriate range for intensive probation supervision ("IPS") according to the IPS risk assessment scale. However, the report also concluded that defendant was not eligible for IPS under Order 89–15 and A.R.S. section 13–914(A)(2) because he had committed a non-technical violation of probation that was chargeable or indictable as a criminal offense. Elsewhere in the report, the probation officer noted that defendant had failed to comply with the terms of probation and concluded that he was unlikely to succeed on either standard probation or IPS. The officer recommended that defendant be sentenced to presumptive prison terms in both cases, with the sentence in the second case to run consecutively to that imposed in the earlier case.

¶ 4 At sentencing, defendant argued that the court could place him on IPS despite the probation officer's contrary conclusion. The prosecutor initially agreed that IPS was both available and appropriate, but later argued that the court did not have the authority to place defendant on IPS. The judge agreed with defendant and, after setting forth the factual and legal reasons supporting her decision, placed defendant on IPS in both cases. On appeal, the State argues that IPS was unavailable because defendant committed a new crime while on probation.

## DISCUSSION

### Was the Trial Court Bound by the Recommendation against IPS?

■ ¶ 5 We first consider whether the trial court was bound by the probation department's recommendation against IPS pursuant to *State v. Brooks*, 156 Ariz. 529, 530–31, 753 P.2d 1185, 1186–87 (App.1988). In *Brooks*, the defendant entered into a plea agreement that provided for either a five-year prison term or placement on IPS. The trial court ordered the probation department to supplement the presentence report by considering the defendant's qualifications for IPS. The probation officer recommended against IPS, concluding that the defendant's

likelihood of success was marginal. The prosecutor then argued that without the recommendation of the probation department the trial court was precluded from imposing IPS. Finding several aggravating factors, the court sentenced the defendant to prison.

¶ 6 On appeal, the defendant argued that the probation officer's authority to determine whether a defendant should be placed in an IPS program invaded the province of the judiciary in determining punishment. *See id.* at 531, 753 P.2d at 1187. Nonetheless, this court affirmed, holding in part that "intensive probation supervision is available to defendants only where the probation officer makes such a recommendation." *Id.* But in considering the application of *Brooks* here, the trial court noted that the IPS statute has been amended and concluded that a recommendation from the probation officer is no longer a prerequisite for IPS. We agree.

¶ 7 The *Brooks* court relied upon former A.R.S. section 12–292(C), which provided, in relevant part: "*If the court accepts the recommendation of the adult probation officer to grant an offender intensive probation,* it may suspend the imposition or execution of the sentence and grant the offender a period of intensive probation." (Emphasis added.) Shortly after *Brooks* was decided, however, the pertinent portion of the statute was amended to read: "The court may suspend the imposition or execution of the sentence and grant the offender a period of intensive probation in accordance with this chapter." A.R.S. § 13–914(C) (1989). By amending the statute, the legislature thereby eliminated the probation department's recommendation as a prerequisite to IPS placement.

### Was the Sentence Otherwise Lawful?

■ ¶ 8 The power of a court to grant probation is not inherent, but is derived from statute, and therefore may be granted only in accordance with statutory authorization. *See State v. Jenson*, 123 Ariz. 72, 74, 597 P.2d 554, 556 (App.1979). Under A.R.S. section 13–901(A) (Supp.1998), any person eligible for placement on standard probation is also eligible for placement on IPS, absent any

other statutory disqualification.[2] Further, contrary to the State's contention, nothing in section 13–914 or Order 89–15 prohibited the trial court from placing defendant on IPS.

¶ 9 Section 13–914 provides, in relevant part:

A. An adult probation officer shall prepare a presentence report for every offender who has either:

1. Been convicted of a felony and for whom the granting of probation is not prohibited by law.

2. Violated probation by commission of a technical violation that was not chargeable or indictable as a criminal offense.

B. The adult probation officer shall evaluate the needs of the offender and the offender's risk to the community, including the nature of the offense and the prior criminal history of the offender. If the nature of the offense and the prior criminal history of the offender indicate that the offender should be included in an intensive probation program pursuant to supreme court guidelines for intensive probation, the adult probation officer may recommend to the court that the offender be granted intensive probation.

¶ 10 Subsection A of section 13–914 simply sets forth the circumstances under which the probation department is required to prepare a presentence report.[3] Subsection B sets forth the criteria that the probation officer is to employ in evaluating an offender and the circumstances under which the officer may *recommend* IPS. But neither subsection restricts the trial judge's authority to place an offender on IPS.

¶ 11 Next, the State relies upon Order 89–15, subsection E, which provides, in relevant part:

1. [Only] those probation eligible offenders convicted of a felony or an undesignated felony may be placed in an intensive probation program. Technical probation violators who are on probation for a felony or an undesignated felony may also be placed in an intensive probation program.

. . . .

7. Pursuant to these administrative requirements and A.R.S. § 13–914.A(2), the superior court may place an offender in the intensive probation supervision program who is already on probation for a felony or an undesignated felony but has violated that probation by commission of a technical violation that was not chargeable or indictable as a criminal offense.

¶ 12 Subparagraphs 1 and 7 of the order are based on the language of A.R.S. section 13–914, which contemplates the supreme court's promulgation of guidelines for the administration of intensive probation programs. *See* A.R.S. § 13–914(B). By its terms, the order was issued under the supreme court's authority to exercise administrative supervision over all inferior courts pursuant to Article 6 of the Arizona Constitution and the provisions of the Arizona Revised Statutes relating to intensive probation. *See* Order 89–15, subsection A. Of course, because the authority of our courts to grant probation is derived solely from statute, we are bound to interpret the language of the order in a manner consistent with the relevant statutes.

¶ 13 Here, the legislature has made IPS available in defendant's circumstances, and we cannot conclude that the supreme court contrarily intended its administrative order to preclude it. Rather, we are convinced that the relevant portions of Order 89–15 do not represent the supreme court's current

**2.** When a person violates probation by committing a subsequent felony offense, prison terms may be imposed for both offenses. *See* A.R.S. § 13–604.02(B) (providing for mandatory revocation of probation on probationary offense and imposition of presumptive prison term on new offense). In this case, however, the State elected to forego the enhancement provision of section 13–604.02 by entering into a plea agreement expressly authorizing probation. *See State v. La-Bar*, 148 Ariz. 522, 524, 715 P.2d 775, 777 (App.

1985) (requiring State to give notice of intent to seek enhancement).

**3.** Rule 26.4(a), Arizona Rules of Criminal Procedure, also requires, with limited exceptions not applicable here, that pre-sentence reports be prepared in all felony cases in which there has been a determination of guilt or in which a defendant has pled guilty or no contest.

directions, but only its position prior to the 1989 amendment of A.R.S. section 13–914.

¶ 14 Moreover, to interpret either Order 89–15 or the statutes relating to probation as precluding the imposition of IPS under the circumstances of this case would lead to absurd results. *See Rasmussen v. Industrial Comm'n*, 162 Ariz. 384, 386, 783 P.2d 830, 832 (App.1989) (recognizing duty to construe statutes to avoid absurdity).[4] For example, under the State's proposed interpretation, had defendant committed a minor technical violation of probation by failing to timely report an address change, the trial court would have had the unfettered discretion to (1) allow him to remain on standard probation, (2) place him on IPS or (3) revoke his probation and impose a prison sentence. On the other hand, the commission of a new criminal offense would only allow for the continuation of standard probation or the imposition of a prison sentence. Neither the legislature nor the supreme court could have logically intended that a more highly structured, closely supervised form of probation be available in the former circumstance but not the latter.

## CONCLUSION

¶ 15 A court is not precluded from placing an offending probationer on intensive probation supervision absent a recommendation from the probation department. Also, if the offender is otherwise eligible for probation, a trial court is not precluded from placing that person on intensive probation supervision for committing an act, while on standard probation, that is chargeable or indictable as a crime. The trial court's order placing defendant on intensive probation is therefore affirmed.

CONCURRING: MICHAEL D. RYAN, Judge, and SARAH D. GRANT, Judge.

---

4. Despite his argument that the court lacked the authority to impose IPS, the prosecutor agreed at the sentencing hearing that, given the purpose of IPS, it did not make sense to preclude it in this case.